**GERSING v. SHINBERG (two cases).**

**Nos. 8510, 8511.**

United States Court of Appeals, District of Columbia.

Submitted Jan. 11, 1944.

Decided Feb. 21, 1944.

Mr. James J. Laughlin, of Washington, D. C., submitted on the brief for appellant.

Mr. Philip Shinberg, of Washington, D. C., submitted on the brief for appellee.

Before GRONER, Chief Justice, and EDGERTON and ARNOLD, Associate Justices.

GRONER, C. J.

This is an appeal from an order in bankruptcy. Maurice and Estelle Gersing, husband and wife, in June, 1942, filed in the United States District Court for the District of Columbia separate voluntary petitions in bankruptcy. The usual orders of adjudication and reference were had. Notice by the Referee of the first creditors' meeting followed, and at this meeting a trustee was elected, approved and qualified. The schedules filed with the bankrupts' petitions showed, in the husband's case, liabilities of over $30,000 and assets of a little more than $2,500; in the wife's case, liabilities of over $20,000 and assets of about $2,400. The trustee having taken over, the bankrupts a month or so thereafter filed with the Referee motions for dismissal of the proceedings. Notice was thereupon given to all persons in interest and a hearing was had before the Referee, at which objections to dismissal were made by the trustee and by five judgment creditors. The Referee denied the motions to dismiss and on the bankrupts' petition for review, certified to the court that the motions were not accompanied by the consents of any creditors, contained no offer of settlement of the claims of creditors, nor an offer to pay the costs already incurred, amounting to around $200. The Referee's conclusion was grounded on lack of jurisdiction in the Bankruptcy Court to dismiss a voluntary petition after adjudication over the objection of creditors. The District Court affirmed, and on this appeal counsel for the bankrupts state that the single question is whether the bankrupts had the right to dismiss the petitions if the same were "not filed in good faith" and if the bankrupts were not in fact insolvent.

█ There was also a suggestion in argument that the five objecting judgment creditors held non-dischargeable debts, in consequence of which they had no interest in the decision and hence under the rule applied in Re Shepardson, D.C., 220 F. 186, dismissal of the bankrupt proceedings should be ordered. In the Shepardson case there was but one creditor whose debt admittedly was non-dischargeable. Confronted with the question whether to refuse a discharge or dismiss the petition, the court, in the exercise of its judicial discretion, elected to dismiss. But the same result by no means follows in the circumstances of this case. Here, as we have seen, the bank-

rupts' schedules show liabilities amounting in the aggregate to $50,000, of which the amounts due to the judgment creditors are only a very small part. The trustee, representing the general creditors, objects to the discharge, and the accrued costs, amounting to over $200, are unpaid. In the circumstances, the plain duty of the court was to deny the petition. See In re Riordan, 7 Cir., 95 F.2d 454, for a discussion of the applicable rule. Moreover, the instant case presents other vital features not found in any of the cases in which the rule of dismissal is considered.

▇ Present counsel calls attention to the fact that one of the questions before the Referee and the Judge was the right of the bankrupts to dismiss because, as he insists, the petitions were not filed in good faith. That they were not filed in good faith is obvious if the present testimony of the petitioners is true; but the argument to sustain the right to dismissal on this ground is that because the former attorney for the bankrupts induced them, as they say, to believe that he could by a short cut relieve them of their obligations, and because this advice proved not to be true, they ought now to be allowed an honorable withdrawal. This quite novel conception of the duty of a court of equity would have us reward the bankrupts' lack of good faith by letting them out of a position which the disclosure of their bad faith made untenable. Apparently they "feel the smart, but not the vice." In the examination before the Referee, Estelle Gersing testified that counsel who represented her in the filing of her petition, but who later withdrew from the case and is not her present counsel, informed her that he knew the Referee in Bankruptcy and that he would be able to get everything cleared up with him with nothing lost to her. Presumably the temptation did goad her on. Her husband's affidavit states that he is and was solvent, and in his testimony he says—in substance—he was tricked by his attorney to go into bankruptcy as the only way to defeat payment of a final judgment for money, which he thought was "framed." It is fair to this attorney to say that he denied all these charges, but it is equally clear that the filing of these petitions was, according to the story which the Gersings now tell, a fraud on the Bankruptcy Court which ought not to be closed and overlooked with the mere affirmance by us of the District Court's order. In remanding the case, therefore, we suggest to the Judge having the matter in charge, that a copy of the record in the case be transmitted to the United States Attorney for his investigation and that a similar copy, for a similar purpose, be transmitted to the Grievance Committee of the Court.

If the bankrupts' testimony of solvency is true, their schedules were fraudulent. If their schedules reflect the true state of their assets and liabilities, the affidavit and testimony of solvency were false. If they were imposed upon by their counsel, or if they knowingly connived with their counsel in the filing of false schedules, or if the whole matter was of their own procurement, the measure of guilt of all concerned should be determined in the interest of justice and without regard to what may be the future course of the bankruptcy proceedings.

Affirmed.